Good morning, Your Honors. Rod Berman for the Appellant AW. I want to be clear as to what the trial demonstrated in this case. Could you speak a little louder, please, Mr. Berman? Thank you. I want to be clear as to what the trial did demonstrate in this case. Number one, the jury didn't find any specific product design infringing. That was Judge Liu's order. What the trial did demonstrate was that Wham-O's water slides were displaced from retail shelves because of lower price and lower price only. Only a trial fraught with legal errors and, in addition, the blurring of the word mark slip and slide with a yellow mark could have resulted in trademark rights being confirmed on a primary color yellow in the toy industry, a color where the undisputed evidence showed that it was gender neutral, commonly used, fade resistant, associated with a sun, seasons, safety, or is the best color to contrast against the green grassy surface upon which these slides are placed. Only such a trial could have found that a mark consisting of a primary color yellow could be found famous like Kodak or DuPont without any evidence of consumer perception putting any evidence that the general public perceived the primary color yellow as a mark of plaintiff. And that's unprecedented in jurisprudence. Well, the jury found otherwise. But the substantial evidence demonstrated that the color yellow was not famous. What the mistake that was made where there was no evidence, there was no evidence that raised the level of secondary meaning to the level of required of fame. This is not a case like the NBA logo with billions of dollars in sales. This is not a case like the Adidas three-stripe where there is a campaign directed to the three-stripe being associated with Adidas. In fact, in this case, what was before the jury was a specific campaign that Wham-O's vice president, Mr. Scrono, wanted to have which was to associate the color yellow with Wham-O. But that didn't occur.  It occurs to me as you're talking that you're telling us about the evidence in the light most favorable to you, but our standard of review requires us to view the evidence in the light most favorable to the party that obtained a verdict. So if we look at it in that way, why are you still entitled to reversal? Well, we have to look at each of the different issues. And some of the issues, because the facts are undisputed, become questions of law. So let's look at the issue of functionality. The undisputed evidence before the jury was a multiplicity of witnesses testifying as to the functional attributes of the color yellow. That was undisputed. And under Ninth Circuit precedent, if there is, if the color is functional, even though there may be non-functional aspects of it, if it's functional, if it has a variety of functions, that's sufficient to find the color functional. Number two is, in this case, the, there was errors of law that were made by the judge. The judge didn't allow expert testimony. I thought there was testimony that the color was not functional, that it didn't make any difference to the consumer, and it didn't make any difference to the action of the water slide, and it didn't make any difference to the safety or et cetera, all the things that you talked about in your opening comment. Well, the only, I'm sorry, Your Honor. The only testimony that existed was testimony that the color yellow was not functional with respect to the cost of producing vinyl. Okay? So that is a utilitarian type of functionality. That was the testimony that was there. It really is irrelevant that there was testimony. I thought there was also a former WAMO employee who said that yellow had no relationship to the function of the slide. There was someone else testifying that it's not functional because a child could still slide down the same way. Well, there's two responses to that. Number one is that's view. And you have a functional slide that's orange, right? That's correct. So why is yellow functional as a matter of law on this record? The law is that if there is evidence of functionality, if there's undisputed evidence of functionality, that's sufficient. The burden is on the plaintiff to demonstrate that it's nonfunctional. And so when you weigh the evidence, the substantial evidence demonstrates that it's completely functional. And what is clear regarding reversal is that Judge Liu made a mistake in his jury instructions. He did not include in the issue of nonfunctionality when he sent his jury instructions to the jury. And it was objected to. It was preserved. And that in itself, under the Fuddruckers case, mandates reversal. The testimony, which deals with aesthetic functionality, the type of functionality that you find in Qualitex and numerous other cases, there's adequate evidence in the record, substantial evidence that supports the functionality. And that goes to the heart of the case, because Mr. Bernstein, who was asked the question as to what were the competitive advantage of using the color yellow, Judge Liu sustained an objection on relevancy, saying impact doesn't matter. The only thing that is a jury question. And impact does matter. That's what Qualitex stands for in subsequent cases. With respect to fame, Your Honor, why it should be reversed is, and I do would like to reserve five minutes for rebuttal. On that point, counsel, I notice that Mr. Furman is also listed as arguing. Are you sharing time with him, or are you representing your side entirely? That's correct, Your Honor. Okay. Thank you for that clarification. With respect to fame, it's clear from Avery Dennison and Grupo Gigante, which is not cited in the paper and I will present to the court by letter. Or you can do it afterwards by filling out a slip with the. In both those cases, what the Ninth Circuit law says is that the plaintiff has to present evidence that the general public associates the color with a particular source. In this case, there was no survey evidence. There was no evidence whatsoever of the general public's association. And that in and of itself is sufficient to warrant reversal in this particular case. And in addition, yes, I'll stop at that point in time. With respect to. Counsel, there is an issue of standing here. Do you want to say a word about that? Sure. First of all, the motion was denied, but I'm happy to speak to that. A.W. purchased the appellate rights through a legitimate assignment for the benefit of creditor's transaction. And as a result of the purchase of the appellate rights, which have not been challenged, no motion to set aside, A.W. has the right to pursue the appeal. And even if A.W. didn't have the right to pursue the appeal, S.L.B. certainly has standing as the defendant in the case. Well, they didn't appeal it. Pardon me? S.L.B. didn't appeal. It absolutely did, Your Honor. S.L.B. filed a notice of appeal in the case and appealed along with A.W. And S.L.B. filed a notice of appeal by its trial counsel. Remember in the ABC, what a little bit of misunderstanding might be presented in the record is that the ABC transferred assets. It didn't transfer the stock in S.L.B. S.L.B. as a New York corporation existed, and that's the entity that filed a notice of appeal and properly filed a notice of appeal. So I don't believe that there's any issue as to standing of either S.L.B. and A.W., and certainly A.W. was injured in fact and was an aggrieved party. The one other point that I'd like to make before reserving my time is on damages and willfulness. There's absolutely no evidence in the record as to damages. There's none. No evidence in the record as to the value of Rameau's mark. No evidence in the record as to diminution in the value of the mark. With respect to willfulness, there's no causal connection between any injury as a result of the use of two shades of the color orange with any alleged false advertising. Well, the two shades, by that I assume you're referring to the fact that the color orange on the box that the consumer sees is nearly yellow. It's very pale, whereas the color of the actual slide is bright neon orange. Is that the two colors that you're talking about? Yes, Your Honor. Okay. What expert, unrebutted, undisputed, the expert, Dr. Hale testified, was that the perception of the color by the consumer was seven times more different between yellow and between a light orange. And I'll point again to the pictures that we sent forth on page 15 of our opening brief. Yeah, we have the boxes and the slides and all of that in our... An intentional in and of itself is not sufficient to find the willfulness necessary for an award of enhanced damages, for an award of attorney's fees. There's going to be fraud, duping, passing off the very purpose of trademark law being eroded here. And there's simply no evidence of willfulness in the record. Before you sit down, I had a question I wanted to ask for clarification.  I thought, and perhaps I misunderstood this, that the jury instruction you were challenging had to do with likelihood of confusion. But in your remarks a few minutes ago, you talked about functionality. Is there more than one jury instruction at issue? Thank you for the question. There are two jury instructions that are at issue. One jury instruction deals with what the effect of a federal trademark registration is. And that jury instruction states that a trademark registration gives the right to exclude others from using the registered mark. And that's just wrong as a matter of law. The instruction should have stated that it's subject to a finding of likelihood of confusion. It just gives the jurors too much to assume. In fact, it gives the jurors an opportunity to have a directed verdict. The other jury instruction, let me get to that, dealt with the issue of likelihood of confusion. And that was the failure, excuse me, the functionality, that was the failure of the court to include in its jury instruction regarding the registered trademark that it has to be shown to be non-functional. And in fact, we do. Okay. This goes back to the issue of who bears the burden of proof and whether it's an affirmative. Okay. That's correct. Got it. All right. And I'd like you to reserve the remainder of my time. I do so, counsel. Thank you. Good morning, Your Honors. May it please the Court. Parker Bagley on behalf of WAMO Manufacturing. Mr. Bagley. I'd like to first address a number of the points that Mr. Berman addressed. First, as to the issue of fame, fame is only relevant in the dilution context, not in the infringement context. And the jury did not award any monetary relief under dilution. The awards were made under the infringement claims, as well as the courts finding that this was an exceptional case that warranted an award of attorney's fees. So fame is really a red herring in the context of what's really being appealed here, the jury verdict of almost $8 million and the permanent injunction.  Judge Graber very properly noted that there, in fact, is quite a bit of disputed testimony, and we've cited the testimony in our brief, which clearly the jury accepted and thought the testimony as to non-functionality was, in fact, appropriate, since they found the mark to be protectable. So it's just not accurate to say there was undisputed evidence of functionality. Moreover, there was, in fact, an instruction on functionality, contrary to counsel's arguments. We cite that at page 16 of our brief and at the excerpts of record at 247 to 249. There was, in fact, an instruction given on functionality. So there is no error by the court in that regard. With respect to the instruction on infringement, likely the confusion that Mr. Berman alluded to, they did not object to that instruction and did not preserve and waive any argument arising from that. The court raised the issue of standing. I'd just like to deal with that briefly. I think we set out the facts in our briefs, but A&W was not a party below, is not named in the judgment, and SLB, as we state, based on testimony acquired in post-judgment discovery, SLB did not authorize this appeal. Mr. Moldow, who was the assignee, testified. Wait a minute. You're saying that no notice of appeal was filed? A notice of appeal was filed by A&W, and they also put SLB on there, but SLB did not authorize that. Don't they have an assignment of rights? Wasn't there a bona fide sale of the appellate rights here? There was a bona fide sale of the appellate rights. However, SLB is the party that is actually subject to the liability to the judgment, and they were never consulted, never authorized any appeal. So that's our position on the standing issue, and it's set forth very clearly, I think, in the record. Well, where does that leave us? Suppose you're right. What happens? Well, I don't think the court even needs to reach the merits, but I think it's a threshold issue, obviously, but if there's no standing, then the merits don't have to be reached. But, you know, be that as it may, we're happy for the court to reach the merits because we do not think there was any reversible error. Turning to the issue of functionality, beyond the facts that we've already discussed, the law, all of the cases that they cite are distinguishable. There's no showing that yellow on a water slide has either aesthetic functionality or utilitarian functionality, and that's borne out by the fact that their slide is actually a bright orange, which also stands out against grass and other surfaces, whereas their box had a yellow slide. What is the ‑‑ well, never mind. Go ahead. I'm going to ask another question about functionality. I guess addressing the additional points made by Mr. Berman, on the damages contrary to Mr. Berman's statements, there's a large amount of evidence in the record of willfulness, bad faith. As the court noted, Judge Liu noted in awarding the attorneys' fees, we sent them two cease and desist letters. On one of them, they agreed to stop and then reneged on that. They, in discovery, failed to produce any sales records concerning these. We were forced to go to other third parties, such as Six Flags, who was licensed, and get the records that they reported to their licensor. And then the mere fact of selling an orange slide in a yellow box is, in and of itself, evidence of willfulness and intentional infringement, and the jury so found properly. With respect to the quantum of damages, it was very clear testimony that SLB had replaced WAMO with respect to the largest retailer in the world, Walmart. They lost a huge account on directly competitive products. There's evidence that Walmart employees were confused, because even though they had moved from the WAMO slip-and-slide to the SLB product, they had returned SLB products to WAMO and charged back costs to WAMO. So there was actual confusion of professionals, not just consumers. One can imply from that and infer that when consumers came in and saw a yellow box, that they were confused as well. The corrective advertising award was supported by the undisputed testimony that WAMO spends approximately $800,000 a year in advertising. The jury took that figure and computed its own corrective advertising award that was supported by the facts and by the law. And the enhanced damages and attorneys' fees that were awarded by Judge Liu were also supported by the willfulness findings made by the jury. I do want to go back for one second and ask you again to quickly tell us why you don't bear the burden of proof on functionality. Well, Your Honor, I think that is a – different courts treat it differently. Even assuming that we do bear the burden, we certainly established it at trial. I think that's a red herring because functionality was clearly addressed. It was instructed on. The jury found that it was a protectable trademark. So whether or not we bore the burden on establishing non-functionality, the jury clearly found that it was non-functional, and that was not erroneous in light of the testimony that Your Honor noted earlier. So you think that's an issue we don't need to decide? I don't think you do. I mean, even if you found that we did bear the burden, I believe we met that burden. So looking at – the issue was clearly presented to the court, even though it had never been raised in the pretrial order or as an affirmative defense in the answer. It was allowed by Judge Liu to be tried. It was instructed on, as I noted earlier. And the issue of the burden of proof, I don't think, comes into play. Thank you very much. Thank you, counsel. Mr. Berman, you have some reserved time. Thank you, Your Honors. I wanted to be brief but comment on a few points that were made, as well as Your Honor. I want to, regarding the functionality issue, just cite you two cases. I believe it's disc golf cited in our paper. A little louder, please. Yes. My kids are not here, so I'm being a little bit softer. The disc golf case, this is one. I remember it well. You remember that well. I do. What's stated in that case, it said, I don't have the page. The site, by the way, is 158 Fed Third 1002. DGA's second argument, that the parabolic design provides a utilitarian disadvantage for disc golf players, is equally unconvincing. A product feature need only have some utilitarian advantage to be considered functional. So in our case, the evidence was substantial evidence. In fact, evidence that was undisputed by Dr. Hale from the plaintiff's own witnesses of functional attributes of it. And that's sufficient under Ninth Circuit law to find the mark functional. Regarding a few points just to make, with respect to the damages in Walmart, even if Walmart, and the evidence clearly showed that Walmart was displaced by the SLB product. But there's no evidence in the record whatsoever of any damages to Wham-O. Wham-O's entire basis for damages was based upon the profits earned by SLB, not on its own damages. You're not going to see a dollar, any witness testifying on dollar amounts. The corrective advertising, again, that is a means of competitive, excuse me, compensatory damage. And I'm not aware of any case whatsoever where a corrective advertising was based upon future advertising costs when there was no evidence of any actual damage whatsoever, diminution in value, or loss of any reputation. Mr. Berman, your time has expired in this case, and we will submit it for decision. But we will ask you to start the process over again with respect to Wham-O versus manly toys.
judges: Reinhardt, Berzon, Goodwin